| | | |
|---|---|---|
| Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>PANEL XI | | |
| ELVIN ROMÁN DÍAZ<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrido | KLRA202300448 | *CERTIORARI*<br>Procedente del Departamento de Corrección y Rehabilitación<br><br>Núm. 12,464-23<br><br>Sobre:<br>Cambio de Custodia |

Panel integrado por su presidenta, la Jueza Brignoni Mártir, el Juez Candelaria Rosa, la Jueza Álvarez Esnard y la Jueza Díaz Rivera

Álvarez Esnard, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 14 de noviembre de 2023.

Comparece Elvin Román Díaz (señor Román Díaz o el Recurrente) y solicita la revocación de la determinación emitida y notificada el 21 de junio de 2023 por el Comité de Clasificación y Tratamiento (CCT) del Departamento de Corrección y Rehabilitación (Departamento de Corrección o la agencia recurrida). Mediante la determinación recurrida, el CCT ratificó el nivel de custodia máxima del recurrente, fundamentado en una modificación discrecional para un nivel de custodia más alta, conforme al historial de violencia excesiva y por estar afiliado a gangas en la institución correccional.

Por los fundamentos que expondremos a continuación, confirmamos la determinación recurrida.

I

El 21 de junio de 2023, el CCT se reunió con el propósito de evaluar el nivel de custodia del señor Román Díaz. Como parte de los acuerdos tomados, el CCT ratificó el nivel de custodia máxima en el que se encuentra clasificado el recurrente por los siguientes fundamentos:

1. **Al aplicar la escala de reclasificación de casos sentenciados arroja puntuación correspondiente a**

Número Identificador

SEN(RES)2023_____

**custodia mediana. Por lo que el Comité de Clasificación y Tratamiento acoge modificaciones discrecionales: historial de violencia excesiva, afiliación a gangas; para otorgar un nivel de custodia más alto**. El miembro de la población correccional fue sentenciado por el Honorable Tribunal de Ponce por delitos que revelan agresividad y conducta violenta (Asesinato en Primer Grado, Tentativa de Asesinato, Fabricación, Distribución, Posesión y Uso de Municiones, 6 casos por Portación y Uso de Armas de Fuego sin Licencia, 7 casos por Posesión o uso ilegal armas largas semiautomáticas) ....... Cumple el mínimo de su sentencia el 22 de enero de 2038; fecha en la que será elegible para la Junta de Libertad Bajo Palabra. Su fecha prevista de excarcelación está para el 28 de abril de 3045. Posee Detainer Federal. Con dicha sentencia el Tribunal pretende garantizar la seguridad institucional y pública.[1]

Mediante *Resolución* emitida y notificada el 21 de junio de 2023, se acogieron los acuerdos y fundamentos del CCT. Tras emitir determinaciones de hecho y conclusiones de derecho, ratificó el nivel de custodia máxima del señor Román Díaz. Allí determinó que, si bien surgen varios ajustes del recurrente, es pertinente señalar que a su sección de vivienda se le aplicó la Regla 9 del *Reglamento para los Procedimientos Disciplinarios de Programa de Desvío y Comunitarios*, Reglamento Núm. 9221, de 2020, por encontrarse durante un registro artículos no autorizado. De igual forma, este fue dado de baja del tratamiento de Control de Conducta Violenta por ausencias y por rehusar continuar con el grupo. Finalmente, el CCT concluyó en la Resolución que, aunque en la Escala de Reclasificación el señor Román Díaz arrojó una puntuación correspondiente a un nivel de custodia mediana, acogía modificaciones discrecionales al nivel de custodia arrojado por la escala y le asigna un nivel de custodia más alto, como consecuencia de su historial de violencia excesiva y por afiliación a gangas.[2]

Inconforme con la determinación, el 26 de junio de 2023, el señor Román Díaz presentó solicitud de reconsideración.[3] En esencia, el recurrente sostuvo que la determinación del CCT no tomó

---

[1] Véase Anejo 1 del Apéndice del *Escrito en Cumplimiento de Resolución.*
[2] Véase páginas 6-8 del Apéndice del *Escrito en Cumplimiento de Resolución.*
[3] Véase páginas13-15 del Apéndice del *Escrito en Cumplimiento de Resolución*

en consideración que, según el nivel de custodia arrojado por la Escala de Reclasificación, le correspondía estar en un nivel de custodia mediana y no en custodia máxima. En esencia, allí razonó el recurrente que se le modificó discrecionalmente el nivel de custodia arrojado por la escala, por el historial de violencia excesiva; y que eso equivale a considerar la gravedad del delito para la modificación discrecional, lo cual no está permitido por nuestro ordenamiento.

Por su parte, el 14 de julio de 2023, la Supervisora de la Oficina de Clasificación de Confinados, la Sra. Marie F. Cruz Brownell no acogió la solicitud de reconsideración presentada por el señor Román Díaz. En lo pertinente, dicha determinación estuvo fundamentada en que el recurrente tiene historial documentado de conducta violenta, tales como asesinato, violación, agresión, intimidación con un arma o incendio intencional que no están totalmente reflejadas en la puntuación del historial de violencia.[4] Además, concluyó en la denegatoria a la solicitud de reconsideración presentada por el señor Román Díaz que éste tiene afiliación prominente con gangas y que en la institución es uno de los dirigentes de un grupo que ocasiona problemas de manejo y utiliza la violencia para lograr sus objetivos.

Aún insatisfecho, el señor Román Díaz comparece ante nosotros mediante el recurso de epígrafe, presentado el 24 de agosto de 2023. En síntesis, el recurrente sostiene que el CCT erró al no considerar que lleva confinado diez (10) años en una custodia máxima. Que obtuvo una puntuación de tres (3) en los Criterios Objetivos de la Escala de Clasificación de Custodia lo que lo hace acreedor de una custodia mediana. Razona el señor Román Díaz que no ha sido objeto de querellas administrativas ni de acción violenta

---

[4] *Véase* páginas 16-17 del Apéndice del Escrito en Cumplimiento de Resolución

alguna; que cuenta con una Hoja de Ajustes excelente y que ha completado las terapias de Aprender a Vivir sin Violencia. Sostiene, además, que el CCT erró en su determinación de denegarle su reclasificación al nivel de custodia mediana arrojado por la Escala de Clasificación de Custodia y modificar la misma discrecionalmente al utilizar como factor determinante un historial de violencia excesiva que según su contención, no es de aplicación a su caso.

El 30 de octubre de 2023, el Departamento de Corrección y Rehabilitación (DCR) compareció ante nos mediante *Escrito en Cumplimiento de Resolución.* En síntesis, sostiene que el criterio discrecional para modificar discrecionalmente el nivel de custodia arrojado por la Escala de Reclasificación y para ratificar el nivel custodia máxima no estuvo fundamentado en la gravedad del delito o en lo extenso de la sentencia, sino que el factor utilizado por el CCT fue el historial de violencia excesiva del recurrente y su afiliación a gangas en la institución correccional.

II

-A-

Toda determinación administrativa está cobijada por una presunción de regularidad y corrección, por ende, la revisión judicial de este tipo de decisiones se circunscribe a determinar si la actuación de la agencia es arbitraria, ilegal, o tan irrazonable que la misma constituye un abuso de discreción. *Otero v. Toyota,* 163 DPR 716 (2005). Los tribunales no deben sustituir el criterio de la agencia o junta concernida, excepto si se demuestra que la decisión se tomó de forma arbitraria o caprichosa, o mediante fraude o mala fe. *Caribbean Communications v. Pol. de P.R.,* 176 DPR 978, 1006 (2009). De igual forma, los tribunales deben dar deferencia a las determinaciones de las agencias sobre asuntos que se encuentren dentro del área de especialidad de éstas. *UPR v. Unión Oficiales UPR,*

206 DPR 140, 155 (2021); *Rivera Concepción v. ARPE*, 152 DPR 116 (2000).

Dicha deferencia, emana del reconocimiento de que de ordinario las agencias administrativas están en mejor posición para hacer determinaciones de hechos al tratar con una materia sobre la cual tienen un conocimiento especializado. (Énfasis nuestro). *Metropolitana SE v. ARPE*, 138 DPR 200, 213 (1995); *Gallardo v. Clavell*, 131 DPR 275 (1992). Más aún, cuando la determinación de una agencia esté apoyada por evidencia sustancial que obre en el expediente del caso, los tribunales deben abstenerse de sustituir el criterio de la agencia por el judicial. *Otero v. Toyota, supra*, págs. 727-728 (2005); *Reyes Salcedo v. Policía de P.R.*, 143 DPR 85 (1997).

Según nuestro ordenamiento jurídico, el concepto de evidencia sustancial es aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. *Morales Tañón v. AEE*, 193 DPR 544, 550 (2012); *Ramírez Rivera v. Depto. de Salud*, 147 DPR 901, 905 (1999). Ello no requiere que a la luz de la prueba que obre en autos la decisión de la agencia refleje la única conclusión lógica a la que podría llegar un juzgador. Pero, tampoco se considerará como correcta una determinación sostenida por un mero destello de evidencia. *Ramírez Rivera v. Depto. de Salud, supra*. El criterio rector en estos casos será la razonabilidad de la determinación de la agencia luego de considerarse el expediente administrativo en su totalidad. *Otero v. Toyota, supra*, págs. 727-728. Por ende, la parte que impugna judicialmente las determinaciones de hechos de una agencia administrativa tiene el peso de la prueba para demostrar que éstas no están basadas en el expediente o que las conclusiones a las que se llegó son irrazonables. *Ramírez Rivera v. Depto. de Salud, supra*, pág. 560.

La Sección 4.5 de la Ley Núm. 38 de 30 de junio de 2017, según enmendada, conocida como Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, 3 LPRA sec. 9675 ("LPAU"), establece que la revisión judicial de una resolución administrativa se extiende exclusivamente a evaluar: (1) si el remedio concedido es el adecuado; (2) si las determinaciones de hechos están sostenidas por la evidencia sustancial que surge de la totalidad de expediente; y (3) si las conclusiones de derecho son correctas, para cuyo escrutinio no tenemos limitación revisora alguna. Mejor dicho, la intervención del tribunal revisor se limita a evaluar si la decisión administrativa es razonable y conforme a derecho.

Para impugnar la razonabilidad de la determinación o demostrar que la evidencia que obra en el expediente administrativo no es sustancial, es necesario que la parte recurrente señale la prueba en el récord que reduzca o menoscabe el peso de tal evidencia. *OEG v. Santiago Guzmán*, 188 DPR 215, 227 (2013); *Domínguez v. Caguas Expressway Motors, Inc.,* 148 DPR 387, 397-398 (1999).

Las determinaciones del Departamento de Corrección, relacionadas al proceso de clasificación de los confinados, merecen particular deferencia, ya que gozan de una presunción de legalidad y corrección debido a la experiencia y pericia que este ente administrativo posee, para llevar a cabo estas evaluaciones. *Lebrón Laureano v. Depto. Corrección*, 209 DPR 489 (2022); *Super Asphalt v. AFI y otros*, 206 DPR 803, 819 (2021); *Cruz v. Administración*, 164 DPR 341, 355 (2005).

-B-

La Constitución de Puerto Rico, en la Sección 19 del Artículo VI, establece como política pública del gobierno reglamentar las instituciones correccionales de modo que sirvan efectivamente sus

propósitos y faciliten el tratamiento adecuado de su población para hacer posible su rehabilitación moral y social.

Mediante la aprobación del Plan de Reorganización Núm. 2-2011, conocido como Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011 (Plan de Reorganización), 3 LPRA Ap. XVIII, Art. 2, se decreta como política pública del Gobierno de Puerto Rico la creación de un sistema integrado de seguridad y administración correccional donde las funciones y deberes se armonicen en un proceso facilitador a la imposición de penas y medidas de seguridad, así como a la custodia de los ciudadanos que han sido encontrados incursos en la comisión de un delito o falta y que establezcan procesos de rehabilitación moral y social del miembro de la población correccional o transgresor, con el fin de fomentar su reincorporación a la sociedad.

Dicho Plan de Reorganización establece las funciones, facultades y deberes del Departamento de Corrección, entre las cuales se encuentran: a) clasificación adecuada y revisión continua de la clientela conforme a los ajustes y cambios de ésta; b) así como estructurar la política pública correccional de acuerdo con este Plan y establecer directrices programáticas y normas para el régimen institucional. Art. 5 (a)(c) del Plan de Reorganización, 3 LPRA Ap. XVIII.

Cónsono con el imperativo constitucional, en función de mantener un sistema correccional eficaz y, a los fines de reglamentar los asuntos relacionados con la clasificación y custodia de un confinado, fue aprobado el *Manual para la Clasificación de los Confinados*, Núm. 9151, Departamento de Corrección y Rehabilitación, 22 de enero de 2020 ("Manual de Clasificación o Reglamento Núm. 9151").

Uno de los propósitos del reglamento es establecer un sistema organizado para ingresar, procesar y asignar a los confinados a

instituciones y programas de adultos del Departamento. Parte II del Reglamento Núm. 9151, *supra*. A tales fines, se creó el Comité de Clasificación y Tratamiento que es el organismo responsable de evaluar las necesidades de seguridad y de programas de los confinados sentenciados. Sec. I del Reglamento Núm. 9151, *supra*.

Para realizar las reclasificaciones periódicas, se sigue el proceso establecido en el Manual de Clasificación, utilizando el *Formulario de Reclasificación de Custodia.* Formulario de Clasificación de Custodia, Apéndice K del Manual de Clasificación, *supra*. No obstante, la reevaluación de custodia no necesariamente resultará en un cambio en la clasificación de custodia o la vivienda asignada. Su función primordial es verificar la adaptación del confinado y prestarle atención a cualquier situación que pueda surgir. Parte II, Sec. 7 del Reglamento Núm. 9151, *supra*. Por su parte, el nivel de custodia se determinará empíricamente a través de un instrumento de medición conocido como *Formulario de Reclasificación de Custodia (Formulario de Reclasificación).* Apéndice K del Reglamento Núm. 9151, *supra*.

El Formulario de Clasificación también le provee al evaluador algunos criterios adicionales, discrecionales y no discrecionales, para determinar el grado de custodia que finalmente recomendará para determinado confinado o confinada. De este modo, el DCR procura asegurar el control y la supervisión adecuada de los miembros de la población penal, individualmente y como grupo. La reclasificación responde al resultado de la Parte II y Parte III de la Escala de Reclasificación, es decir, al resultado de: (1) la puntuación en la evaluación de custodia; (2) las consideraciones especiales de manejo; (3) las modificaciones no discrecionales; (4) las modificaciones discrecionales para un nivel de custodia más alto, y (5) las modificaciones discrecionales para un nivel de custodia más bajo. *Lebrón Laureano v. Depto. Corrección, supra,* pág. 502.

Luego de evaluar ciertos factores objetivos, el nivel de custodia que se asignará se hará conforme a  la escala con clasificaciones de custodia mínima, mediana o máxima.  La escala de evaluación para determinar el grupo en el que se ubicará al confinado está basada en criterios objetivos a los que se asigna una ponderación numérica fija. Así, mientras más alta es la puntuación en la escala, mayor es el nivel de custodia que necesita el confinado. *López Borges v. Adm. de Corrección*, 185 DPR 603, 609 (2012).

Así, los criterios objetivos que el Comité evaluará en el proceso de reclasificación de custodia del confinado serán los siguientes:  (1) la gravedad de los cargos y sentencias actuales; (2) historial de delitos graves previos; (3) historial de fuga; (4) número de acciones disciplinarias; (5) acciones disciplinarias previas serias; (6) sentencias anteriores por delitos graves como adulto; (7) participación en programas y tratamiento; y (8) la edad del confinado. A cada criterio descrito se le asigna una puntuación en la plantilla de evaluación que se sumará o restará según corresponda a la experiencia delictiva del confinado. El resultado de estos cómputos establece el grado de custodia que debe asignarse objetivamente al evaluado. Formulario de Reclasificación de Custodia, Apéndice K del Manual de Clasificación, *supra*.

Por otra parte, nuestro Más Alto Foro ha reconocido que la determinación administrativa sobre el nivel de custodia de los confinados requiere efectuar un adecuado balance de intereses. *López Borges v. Adm. Corrección, supra*; *Cruz v. Administración, supra*, pág. 352. Por un lado, está el interés público de lograr la rehabilitación de la persona confinada y el interés en la seguridad de la institución y de la población penal. Por el otro, el interés de la persona confinada particular de permanecer en determinado nivel de custodia. *Íd*. No empece a ello, el interés público en la rehabilitación de la población penal y la seguridad institucional debe

prevalecer sobre el interés particular del confinado en permanecer en un nivel de custodia en específico o en determinada institución penal. *Íd.*, a la pág. 354. Dado que, precisa el sopesar una serie de factores, la determinación sobre la procedencia de un cambio de custodia requiere la pericia de Corrección. *Íd.* Recordemos que el Tribunal Supremo ha expresado que "estos reglamentos delimitan la discreción que ostenta la Administración de Corrección en relación con la clasificación de custodia de los confinados". *López Borges v. Adm. Corrección, supra*; *Cruz v. Administración, supra.* El nivel de custodia responde al resultado entre la puntuación en la evaluación de custodia, las consideraciones especiales de manejo y las modificaciones discrecionales y no discrecionales ya sea para un nivel de custodia mayor o menor. Como consecuencia, las determinaciones del DCR con respecto al proceso de clasificación de confinados merecen particular deferencia. *Íd.*

La agencia tiene la discreción de analizar caso a caso el conglomerado de criterios que tiene a su haber para evaluar el nivel de custodia en el cual debe estar cada confinado, en ánimo de salvaguardar no solo su efectiva rehabilitación, sino, además, la seguridad institucional y de la población confinada. *Lebrón Laureano v. Depto. Corrección, supra*, pág. 513.

Es doctrina reiterada que tomar en consideración únicamente un factor de la condena al momento de reclasificar al confinado, por ejemplo, la extensión de la sentencia constituye un claro abuso de discreción por parte de Corrección. *López Borges v. Adm. Corrección, supra*, pág. 611; *Cruz v. Administración, supra*, págs. 358-359.

Sin embargo, **el criterio de historial de violencia excesiva para modificar discrecionalmente el nivel de custodia arrojado por la escala de clasificación comprende las circunstancias violentas del delito y corresponde a fundamentos distintos al criterio de gravedad del delito**. **Esto porque el criterio de**

**historial de violencia excesiva se centra en las características violentas de este y el de gravedad del delito en su clasificación.** Véase, *Lebrón Laureano v. Depto. Corrección, supra,* págs. 507-508. Este criterio discrecional de modificación de custodia por historial de violencia excesiva es un criterio distinto al de gravedad del delito y a lo extenso de la sentencia y tampoco se circunscribe únicamente a la conducta del confinado en la institución. El criterio incluye, pero no se limita, a conducta dentro de la institución. Véase, *Lebrón Laureano v. Depto. Corrección, supra,* págs. 509-510. La puntuación obtenida en la parte II de la Escala de Reclasificación, por sí sola, no conlleva un cambio automático en la clasificación del nivel de custodia, ya que procede tomar en consideración otros factores tales como las modificaciones discrecionales. La aplicación de la modificación discrecional del nivel de custodia por historial de violencia excesiva no constituye un abuso de discreción. Véase*, Lebrón Laureano v. Depto. Corrección, supra,* pág. 512.

III

En el caso que nos ocupa, conforme a los criterios objetivos de la escala de clasificación de custodia, el recurrente arrojó una puntuación total de tres (3) que corresponde a un nivel de custodia mediana. Sin embargo, en dicho documento el CCT recomendó una modificación discrecional del nivel de custodia mediana arrojado por la escala para un nivel de custodia máxima. El CCT fundamentó la modificación discrecional a una custodia máxima, conforme al historial de violencia excesiva del recurrente y por su afiliación a gangas en la institución correccional.

Conforme a la normativa jurisprudencial anteriormente esbozada, al considerar el historial de violencia excesiva para modificar discrecionalmente el nivel de custodia arrojado por la escala, el CCT no atribuyó la modificación discrecional a la gravedad del delito o a lo extenso de su sentencia para así mantenerlo en

custodia máxima. Como bien se concluye en *Lebrón Laureano v. Depto. Corrección, supra,* el criterio de historial de violencia excesiva para modificar discrecionalmente el nivel de custodia arrojado por la escala de clasificación comprende las circunstancias violentas del delito y corresponde a fundamentos distintos al criterio de gravedad del delito. Esto porque el criterio de historial de violencia excesiva se centra en las características violentas de este y el de gravedad del delito en su clasificación. *Lebrón Laureno v. Depto. Corrección, supra,* págs. 507-508.

Como corolario de lo anterior, concluimos que al modificar discrecionalmente el nivel de custodia mediana arrojado por la escala de clasificación y ratificar el nivel de custodia máxima al recurrente, el (DCR) no incurrió en abuso de discreción. Dicha modificación discrecional obedeció al historial de violencia excesiva y a la afiliación a gangas del miembro de la población correccional, y no a lo extenso de su sentencia.

IV

Por los fundamentos anteriormente expuestos, los cuales hacemos formar parte de esta Sentencia, confirmamos la Resolución recurrida.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones